VANDERVEER VANDORN and wife

*v.*

THE NEW JERSEY SOUTHERN RAILROAD CO.

Complainants allege that the chief-engineer of the R. & D. B. R. R. Co. made an agreement with one J. G. V. in 1860, that in consideration of his giving the right of way for their track through a certain farm, the company would, among other things, fence both sides of the track.   J. G. V. had no interest then in the land.   The defendants, as the successors of the R. & D. B. R. R. Co., bought and paid for the same strip about 1870, and it was conveyed to them by a deed, by endorsement whereon one A. V. (who held an estate in remainder in the premises) covenanted to maintain the said fences.   After 1870 the farm was conveyed to complainants.   On a bill for specific perform-

ance of the first-mentioned agreement to fence—*Held*, that the defendants were under no legal obligation to fence their track by virtue of the agreement of 1860, the consideration thereof having wholly failed; nor under the general railroad law (*Rev. 933 ᶞ 120*), which only applies to corporations formed thereunder; nor, in this court, under the general fence act (*Rev. 413*), which provides its own remedy for a violation or non-observance of its provisions.

Bill for specific performance.   On final hearing on pleadings and proofs.

*Mr. James Steen,* for complainants

*Mr. John L. Conover,* for defendants.

THE CHANCELLOR.

The complainants are the owners in fee of a farm in Monmouth county, through which the railroad of the defendants passes, and the bill is filed to compel the defendants to make and maintain a fence upon each side of their road through the farm.   The grounds upon which the claim to relief is founded are a contract by the Raritan and Delaware Bay Railroad Company, the predecessors of the defendants, and the statutory obligation to fence under the general railroad law, which, it is insisted, applies to the defendants, and the mutual obligation imposed by statute upon owners of adjoining lands to make and maintain partition fences.

The contract set out in the bill is an agreement in writing, made in or about 1860, by the then chief-engineer of the Raritan and Delaware Bay Railroad Company, in which it was recited that theretofore John C. Vanderveer had made a certain covenant with that company to give to them, free of cost, the right of way through lands of his, or of his family, in the county of Monmouth, and that it was deemed proper that the company should fence the land, and that they thereby, by their engineer, agreed to fence it; and it was thereby declared that for and in consideration of $1 paid to each party by the other, and the further consideration that Augustus Vanderveer should procure for the company good and sufficient deeds, or other instruments of writing as might be advised by counsel learned in the law,

whereby the title to such land of the Vanderveer estate as might be used by the company in accordance with their charter should vest in the company, the company, by their engineer, thereby declared to be duly authorized so to do, did thereby agree to fence, in a good and sufficient manner, according to law, on both sides of the railroad, the lands so conveyed to them. And it was thereby declared to be further agreed that they should give to Augustus Vanderveer a free pass for himself forever over their road, and also that they should cause to be made a good and safe pass-way for cattle over or across the railroad at the lane on the premises. When this agreement was made, John G. Vanderveer had no title to the farm, and Augustus·Vanderveer had none. The title was in the executors of John Herbert, deceased, who was the father-in-law of John G. Vanderveer, and who, by his will, gave it to them in trust to hold it for the use and benefit of his daughter, the wife of John G. Vanderveer; she to have the full and free possession of it, and to have the rents, income and profits thereof for life, without any interference or control of her husband, and, in case it should be deemed advisable at any time during her life, to dispose of the property, they were authorized, empowered and directed to sell it, with her previous consent in writing, and invest the proceeds, and pay her the interest for life; and, if the property had not been sold at her death, they were directed to sell it at public sale after her death, and the principal of the investment, or the proceeds of the sale (according as the property should be sold before or after her death), were to be equally divided between her children. Augustus Vanderveer was one of her children.

About ten years after the agreement was made, John G. Vanderveer and his wife, and the executors of Herbert, conveyed the land for the right of way in fee to the New Jersey Southern Railroad Company, by deed dated May 23d, 1870, for the consideration of $450. The deed was recorded June 1st, 1870. The receipt of the consideration was acknowledged by the grantors in the usual way in the deed. It was also thereby declared to be agreed that the company should give to Augustus Vanderveer a free pass for himself over their road for life. Upon

the deed was endorsed a receipt and agreement, signed by Augustus Vanderveer, and under seal, by which he acknowledged the receipt of the $450, the consideration-money mentioned in the deed, in full, for the land thereby conveyed, and for making and maintaining the fences on both sides of the railroad along the lines of the land, and for making and maintaining all necessary cattle-guards, crossings and bridges on the land; and he thereby bound himself, his heirs and assigns, to make and maintain such fences and guards, crossings and bridges. It is quite clear that no effect can be given to the agreement of 1860. The undertaking, on behalf of the Raritan and Delaware Bay Railroad Company, therein contained, was predicated upon and in consideration of the grant of the right of way free of cost, and it is evident that the company never received such grant; but, on the contrary, their successors, the New Jersey Southern Railroad Company, were, in 1870, compelled to buy the land for the right of way for the sum of $450. The deed given to them contained no agreement on their part to fence, while it does contain a provision for a free pass for life for Augustus Vanderveer. The covenant of the latter endorsed upon the deed, by which he agreed to make the fences &c., may be considered as part of the history of the transaction. My conclusion upon the subject is, however, in nowise dependent upon or affected by it. The consideration of the agreement of 1860 wholly failed. It is not claimed that the New Jersey Southern Railroad Company themselves ever agreed to fence.

By the deeds under which the complainants derive their title, all of which were subsequent to the date and record of the deed to the railroad company, that conveyance was recognized. They are chargeable with notice that the covenant of John G. Vanderveer and the agreement of Augustus Vanderveer, mentioned in the agreement of 1860, were never performed. The agreement to fence (it is not a covenant) was based upon and was in consideration of a conveyance which was never made, and it was made with parties who had no title to the property. The complainants have no right to a decree for specific performance of it.

Nor are they entitled to a decree compelling the company to

make and maintain the fences, upon the ground that such is their statutory duty.  The charter of the company contains no provision requiring them to make and maintain the fences, and the provision for fencing in the general railroad law is confined by its terms to companies formed under that act.  *Rev. p. 933 § 32.*

Nor are the complainants entitled to a decree under the provisions of the act regulating fences.  That act not only provides a way in which one who owns land adjoining that of another may be required to make his proportion of the line fence, but it provides also a remedy for his failure to do so.

The bill will be dismissed, with costs.